# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 3741 | **DATE** | 9/11/2000 |
| **CASE TITLE** | RANDY GUY and DENISE GUY vs. RIVERSIDE POLICE OFFICERS LARA, | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter memorandum opinion and order. The Court grants in part and denies in part defendants' and plaintiffs' motion to strike [53-1,54-1] and grants in part and denies in part defendants' motion for summary judgment. Status hearing set for 9/20/00 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | **SEP 11 2000** | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | 00 SEP 11 PM 2: 34 | 9/11/2000 date mailed notice | | |
| CG | courtroom deputy's initials | | CG mailing deputy initials | | |

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RANDY GUY and DENISE GUY,    )
    )
    Plaintiffs,    )
    )
    v.    )    **Judge Ronald A. Guzman**
    )
RIVERSIDE POLICE OFFICERS    )    98 C 3741
LARA, LEGGE, and OTHER    )
UNKNOWN OFFICERS,    )
    )
    Defendants.    )

*DOCKETED SEP 1 1 2000*

## MEMORANDUM OPINION AND ORDER

Plaintiffs Randy and Denise Guy have sued Riverside Police Officers Lara, Legge, and other

unknown officers alleging that defendants' treatment of them violated 42 U.S.C. § 1983 ("section

1983"). Defendants have moved for summary judgment and have moved to strike plaintiffs' self-

styled "Statement of Disputed Facts" as well as portions of plaintiffs' LR 56.1(b)(3)(B) Statement.[1]

In addition, plaintiffs have moved to strike portions of defendants' response to plaintiffs' Local Rule

56.1(b)(3)(B) Statement of Undisputed Facts. For the reasons provided in this Memorandum

Opinion and Order, the Court: (1) grants defendants' motion to strike the Statement of Disputed

Facts; (2) grants in part and denies in part its motion to strike portions of plaintiffs' LR 56.1(b)(3)(B)

Statement; (3) grants in part and denies in part plaintiffs' motion to strike portions of defendants'

---

[1] In a Memorandum Opinion and Order dated August 10, 1999, then United States District Court Judge Ann Williams dismissed Denise's excessive force claim (Count III) and the Guys' intentional infliction of emotional distress claim (Count VI). In a Minute Order dated September 22, 1999, Judge Williams dismissed the Guys' unlawful search claim (Count IV). The case has since been reassigned to this Court. Thus, defendants' summary judgment motion seeks dismissal of the following remaining section 1983 claims: (1) all claims against unknown officers; (2) unreasonable detention of Mrs. Guy (Count V); (2) detention of Mr. Guy without probable cause (Count I); and (3) excessive force as to Mr. Guy (Count II).

response to their Local Rule 56.1(b)(3)(B) Statement; (4) and grants in part and denies in part defendants' motion for summary judgment.

## Facts

The following facts are either undisputed or deemed admitted because the party's response failed to comply with Local Rule 56.1. The following does not include any fact that was unsupported by the proponent's citation to the record.[2]

At approximately 8:50 a.m. on December 5, 1997, the Riverside police radio dispatcher announced that a bank robbery occurred at the Superior Bank in Riverside, Illinois. (Defs.' LR 56.1(a)(3) ¶¶ 6-7.) The dispatcher described the suspect as "male white," with "short hair," "red hair and facial hair, a blue cap, flannel shirt and jeans" and "armed with a handgun." (*Id.* ¶¶ 9-10; Defs.' Ex. C, Radio Dispatch Tape (Broadcasted Portions) of 12/5/97, at 50-51, 55-59.) Riverside Police Officer Lara, who was four blocks from the bank, heard the dispatcher describe the armed robber as a white male with red hair wearing a checkered shirt and a ball cap. (*Id.* ¶ 9; Defs.' Ex. C, Radio Dispatch Tape (Broadcasted Portions) of 12/5/97, at 50-51, 55-59.) Police Officer Legge, who was driving in another car, recalls that the dispatch described an armed, bearded, white male wearing a ball cap and a plaid shirt. (*Id.* ¶ 12.) Neither Lara nor Legge recall hearing a description of the suspect's height, age, or weight. (*Id.* ¶ 13.)

---

[2]For example, in support of several of plaintiffs' additional facts that require the denial of summary judgment, plaintiffs cite paragraphs of defendants' statement of facts, which, in most cases and for obvious reasons, do not support plaintiffs' fact statements.

At approximately 8:50 a.m. on December 5, 1997, the Guys drove their truck out of a parking lot of the U.S. Post Office that was adjacent to the Superior Bank in Riverside and onto Burlington Street. (*Id.* ¶ 14.) Mr. Guy was wearing a white, black, and red checkered outer shirt, jeans, and a blue baseball hat and had dark hair, a mustache, and a goatee with gray hair. (*Id.* ¶ 15.) When Lara approached the bank, he overheard a radio dispatch from Riverside Police Officer Hoes ("Hoes"), who was closer to the bank than Lara. (*Id.* ¶ 16.) Hoes indicated that a red and white pickup was leaving the bank and that a person fitting the description of the bank robber was inside the truck. (*Id.*) Lara then saw a vehicle matching that description with a driver matching the armed robbery suspect's description and made a U-turn in an effort to initiate a felony stop of the truck. (*Id.* ¶¶ 17-18.) Lara activated the police car's lights and sounded the siren twice. (*Id.* ¶ 18.) After Mr. Guy stopped his truck, Lara pulled behind it and reported to the police dispatcher that he had stopped the vehicle of the offender which he believed matched the description and then reported his location. (*Id.* ¶ 19.) Legge headed toward the location to assist him. (*Id.*)

Lara got out of the police car, drew his weapon, and Mr. Guy exited the truck. (*Id.* ¶¶ 20-21.) After the Guys exited from their truck, Lara handcuffed Mrs. Guy and Hoes handcuffed Mr. Guy. (*Id.* ¶¶ 23-24.) Immediately after the Guys were apprehended, an unknown officer at the scene stated, "I know him. He's a landscaper in this village." (Pls.' LR 56.1(b)(3)(B) ¶ 13.) Lara and Legge do not recall hearing the officer's identification of Randy Guy as a local resident. (*Id.* ¶ 14.)

Hoes transferred custody of Mr. Guy to Legge and told Legge that he had not been searched. (*Id.* ¶ 26.) Legge directed Mr. Guy to the back of the squad car and told him to spread his legs, move back from the car, and bend his upper torso over the car. (*Id.* ¶ 27.) Legge bent Mr. Guy over the back of the squad car in an effort to prevent him from falling face first onto the trunk. (*Id.* ¶ 28.)

3

Legge informed Mr. Guy that this was not a laughing matter and that the FBI was involved to which Mr. Guy responded, "F*** the FBI." (*Id.* ¶ 30.) Legge, a trained and certified defensive tactics instructor, then placed Mr. Guy's torso on the squad car, spread his legs, and used force to properly position him to be frisked. (*Id.* ¶ 31.) Mr. Guy claims that the force used injured his left shoulder, left arm, and left wrist.[3] (*Id.* ¶ 33.)

Next, Officer Lara searched the Guys' truck. (*Id.* ¶ 40.) During his search, he discovered a loaded handgun in Mrs. Guy's purse which was sitting on the passenger seat of the truck. (*Id.* ¶ 41.) He informed other officers of his discovery. (*Id.*)

After Mr. and Mrs. Guy were handcuffed and detained and the handgun was found during a search of the car,[4] Assistant Chief Johnson drove the witnesses to the bank robbery to the scene to identify Mr. Guy. (*Id.* ¶¶ 44-46.) After Johnson drove the witnesses by the scene, Johnson broadcast the statement, "Riverside Units, that's a negative . . . that's a negative." (Pls.' LR 56.1(b)(3)(B) ¶ 9; Defs.' Ex. C, Radio Dispatch Tape (Broadcasted Portions) of 12/5/97, at 174.) Mr. Guy never heard the witnesses state "that is positively not him" and could not recall in exact words what was broadcast over the police radio. (*Id.* ¶ 54.) After Lara heard that statement he ordered officers to transport the Guys to the Riverside Police Station. (*Id.* ¶ 48.)

---

[3]Later in the day, Mr. Guy refused an offer from Detective Tuma of the Riverside Police Department to have paramedics transport him to a hospital for treatment. (*Id.* ¶ 85.) After the incident, Mr. Guy applied ice to his wrist, restricted its use, and took some Aleve, an over-the-counter pain medication. (*Id.* ¶ 90; Ex. E., at 50.) He was also given a prescription for an anti-inflammatory medication. (*Id.* ¶ 90.) X-rays showed there were no broken bones. (*Id.* ¶ 89.)

[4]Although plaintiffs state that the search of the vehicle occurred after the witnesses to the bank robbery arrived at the show up, *see* Pls.' LR 56.1(b)(3)(B) ¶ 21, plaintiffs' reference to Mrs. Guy's deposition testimony does not support such a statement. (*Compare id., with* Defs.' Ex. K, Denise Guy Dep., at 48, lines 3-6.)

4

After the Guys were transported to the station, Lara and another officer secured the scene where the Guys were stopped and discovered a large, empty gun holster. (Id. ¶ 56.) Lara thought the large holster was suspicious because it was consistent with the report that the bank robber had used a large handgun. (*Id.* ¶ 57.)

Approximately thirty to forty minutes after Lara arrived at the station, he told Mrs. Guy that he had discovered a handgun in the car and she stated that she kept it for protection. (*Id.* ¶ 58.) Lara informed her that the reason the police took her into custody was because they had a report of a bank robbery and Mr. Guy matched the description of the robber. (*Id.* ¶ 59.) At approximately 10:30 a.m., Lara informed Mrs. Guy of her *Miranda* rights. (*Id.* ¶¶ 60-61.) Mr. Guy was allowed to sit on a bench in the booking room area of the police station. (*Id.* ¶ 62.)

Lara called Assistant State's Attorney Lauren Neshek for approval of the felony charge of Unlawful Use of a Weapon prior to taking a statement from Mrs. Guy. (*Id.* ¶ 74.) He called Neshek about an hour after his initial conversation with Mrs. Guy in which she admitted that the handgun was hers. (*Id.* ¶ 75.) During his conversation with Neshek, he informed her of the details of the stop, what the original call was, and what was discovered after the stop.[5] (*Id.* ¶ 76.)

Agents from the Federal Bureau of Investigation (FBI) arrived at the station. (*Id.* ¶ 64.) They asked Lara and Hoes about the status of their preliminary investigation. (*Id.*) Lara replied that Mr. Guy matched the description of the robber but that the witnesses could not positively identify Mr. Guy as the bank robber. (*Id.* ¶ 65.) After Lara interviewed Mrs. Guy, the FBI agents interviewed

---

[5]Neshek finally approved the felony charge at 3:00 p.m. (*Id.* ¶ 77.)

her. (*Id.* ¶ 66.) Lara was present, but did not ask any questions. (*Id.* ¶ 68.) The FBI interview occurred between 10:30 and 11:30 a.m. (*Id.* ¶ 67.)

The FBI agents determined that Mr. and Mrs. Guy were not involved in the bank robbery. (*Id.* ¶ 71.) Mr. Guy was released shortly thereafter. (*Id.*) However, because Lara found a loaded handgun in Mrs. Guy's purse and she admitted that the handgun was hers, Mrs. Guy was held for further processing. (*See id.* ¶ 73.)

At the time, the Maywood Court Facility had two bond hearings, one at 9:30 a.m. and another at 2:00 p.m. (Defs.' Ex. N., Karczewski Aff. ¶ 5.) In order for Mrs. Guy to be placed on the 2:00 p.m. bond call, Lara was required to complete the following tasks by 1:30 p.m.: book Mrs. Guy, fingerprint her, submit her fingerprints to the state police for identification and wait for a response; run her name for outstanding warrants; and obtain felony approval from an Assistant State's Attorney. (*Id.* ¶¶ 7-8.) Lara could not complete the above before 1:30 p.m. on December 5, 1997, because (1) he was required to cooperate with the FBI investigation by presenting Mrs. Guy to be interviewed by the FBI agents (Defs' LR 56.1(a)(3) ¶¶ 64-68); (2) the Illinois State Police did not complete its background check regarding her arrest record until 3:45 p.m. (*id.* ¶ 80); and (3) the Assistant State's Attorney did not approve the felony Unlawful Use of a Weapon charge until 3:00 p.m. (*id.* ¶ 77).

Mrs. Guy complains of the following treatment while she was held in custody. She was handcuffed from the time of her arrest, throughout the interview with Lara and the FBI agents, and until she was placed in a cell three hours later. (Pls.' LR 56.1 (b)(3)(B) ¶ 45.) When she complained to Lara that she had no ability to use the toilet without being seen, he told her she would have to use

6

the toilet in the cell as it was. (*Id.* ¶ 42.) Further, Lara left the door leading from hallway adjacent to the cell to the adjoining area ajar. (*Id.* ¶ 43)

Only three out of the six counts in plaintiffs' Amended Complaint remain: (1) unreasonable detention of Mrs. Guy (Count V); (2) continued detention of Mr. Guy without probable cause (Count I); and (3) excessive force as to Mr. Guy (Count II). Defendants have moved for summary judgment on these remaining counts.

## Discussion

### I. Motions to Strike

First, defendants move to strike plaintiffs' self-styled "Statement of Disputed Facts." Local Rule 56.1 provides that: (1) the movant shall file a statement of undisputed facts, *see* LR 56.1(a)(3); (2) the nonmovant shall file a response to the movant's statements, *see* LR 56.1(b)(3), and a statement of any additional undisputed facts that require the denial of summary judgment, *see* LR 56.1(b)(3)(B); and (3) that the movant may file a reply to the nonmovant's additional undisputed facts, *see* LR 56.1(a). This the parties have done. However, plaintiffs also filed a "Statement of Disputed Facts." With regard to the filing of their Statement of Disputed Facts, the plaintiffs have failed to comply with Local Rule 56.1. The Local Rule does not contemplate the filing of such a statement and the Court finds the statement extraneous. Therefore, defendants' motion to strike plaintiffs' "Statement of Disputed Facts" is granted.

Second, defendants move to strike portions of plaintiffs' response to the summary judgment motion because plaintiffs have failed to comply with Local Rule 56.1. That rule requires in part that a party opposing a summary judgment motion must serve and file:

(A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and

(B) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

LR 56.1(b)(3). The Seventh Circuit has "repeatedly upheld the strict enforcement of these rules, sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (listing cases).

After reviewing plaintiffs' response to defendants' statement of undisputed facts, the Court agrees that a great portion of plaintiffs' submission does not comply with LR 56.1(b). In plaintiffs' response to paragraphs 13, 36, 39-41, 48, 51, 55, 58-59, 64-66, 71-73, 76-78, and 86 of defendants' statement of undisputed facts, plaintiffs fail to reference any affidavit, part of the record, or other supporting material to support their denial. The Seventh Circuit has stated time and time again that "district courts are not obliged in our adversary system to scour the record looking for factual disputes" and the Court declines to do so here. *See Waldridge*, 24 F.3d at 922 (listing cases). Thus, the Court deems those paragraphs admitted. In addition, plaintiffs neither admit nor deny the fact statements in paragraphs 49, 50, 52, 57, 81 and merely respond that they lack knowledge regarding those facts. Accordingly, those statements are deemed admitted.

Further, although plaintiffs reference parts of the record in support of their denial of paragraphs 27-32, the referenced parts of the record do not support their wholesale denial of those statements. With regard to the denial of paragraph 27, the cited portion of the record merely refers to Mr. Guy's recounting of his alleged injury and does not dispute that Officer Legge directed Mr.

Guy to the back of the squad car, told him to spread his legs, move back from the car and bend his upper torso over the car. (*Compare* Defs.' Ex. E, at 20, lines 15-24, *with* Defs.' LR 56.1(a)(3) ¶ 27.) Thus, these fact statements in paragraph 27 are deemed admitted. With regard to plaintiffs' denial of paragraphs 28-31, while the cited part of Mr. Guy's deposition supports his denial of physical resistance to being frisked, it does not support his denial of the fact that Officer Legge: (1) bent Mr. Guy over the back of the squad car in an effort to help prevent him from falling face first onto the trunk; (2) did not have his hands on Mr. Guy's hands or handcuffs at that time; (3) bent Mr. Guy over the car, spread his legs, and began to search his legs; (4) informed Mr. Guy that it was not a laughing matter and that the FBI was involved to which Mr. Guy replied, "F*** the FBI"; and (5) placed Mr. Guy's torso on the squad car, spread his legs, and applied a pressure point technique, which he knows as a trained and certified defensive tactics instructor, to Mr. Guy's left hand and wrist area in order to position him to be frisked without injuring him. (*Compare* Defs.' Ex. E, at 39, lines 1-9, *with* Defs.' LR 56.1(a)(3) ¶ 28-31.) Lastly, with regard to paragraph 32, which states "Mr. Guy . . . denied being injured by the use of handcuffs or when he was lifted off of the ground," Mr. Guy responded that one of defendants' three cites to the record does not refer to handcuffs. (Pls.' LR 56.1(b)(3)(A) ¶ 32.) He does not dispute, however, that the other citations fully support the statement. (*Compare* Pls.' LR 56.1(b)(3)(A) ¶ 32, *with* Defs.' LR 56.1(a)(3) ¶ 32.) Thus, paragraph 32 is deemed admitted.

Defendants also move to strike paragraph 13 of plaintiffs' statement of additional undisputed facts or their LR 56.1(b)(3)(B) statement because they contend that it is hearsay. Paragraph 13 states: "A fellow officer at the scene (identified by Defendants as Lyons Police Officer Paul Haun) identified Randy Guy as a local landscaper personally known to him (Plaintiffs are Lyons

9

residents)." (Pls.' LR 56.1(b)(3)(B) ¶ 13.) Before the Court analyzes whether the statement contains hearsay, it must determine whether the fact statements in that paragraph 13 are properly supported by the referenced parts of the record. In support, plaintiffs cite Mrs. Guy's deposition testimony in which she states, "I heard other police cars come up. I heard one of the officers say I know him. He's a landscaper." (Defs.' Ex. K, at 35-36.) Mrs. Guy further testified that she did not know who the officer was. (*Id.* at 36.) Plaintiffs also cite Mr. Guy's deposition testimony that stated the following was said to him: "I know him. He's a landscaper in this village." (Defs.' Ex. E., at 37, lines 9-13.) Mr. Guy further testified that he "didn't recognize who it was that said that." (*Id.*) Clearly, the referenced parts of the record do not support the parenthetical information that Officer Haun was the officer who made the remarks or that the Guys are Lyons residents. Accordingly, that information is stricken from paragraph 13.

The Court finds that the statement is not hearsay at all because it is not offered to prove the truth of the facts asserted therein, *i.e.*, it is not offered to prove that the unknown officer really did know Mr. Guy or that he was a local landscaper. The truth of these facts is actually immaterial to the question of probable cause to arrest or detain. The statements of the unknown officer are offered for the purpose of proving the state of mind of officers Lara and/or Legge when they arrested and detained the plaintiffs. It is their state of mind that is relevant to the question of probable cause. Therefore, because the statement is not hearsay, the Court denies defendants' motion to strike paragraph 13 of plaintiffs' statement of undisputed facts.

Third, plaintiffs move to strike defendants' response to paragraphs 34 through 50 of plaintiffs' statement of additional undisputed facts. Plaintiffs rely on the fact statements in these paragraphs to support Mrs. Guy's claim that defendant Lara deliberately delayed her probable cause

hearing and thus her detention violated of the Fourth Amendment. In their responses to these paragraphs, defendants state: "The allegations in . . . [these paragraphs] are immaterial and should be stricken in light of Judge Williams' August 10, 1999, Order which dismissed Mrs. Guy's excessive force and intentional infliction of emotional distress claims . . . ." (Defs.' Resp. Pls.' LR 56.1(b)(3)(B) ¶¶ 34-50.) Unfortunately for defendants, some of the facts in these paragraphs, specifically paragraphs 42, 43, and 45 are not immaterial to the extent that they support Mrs. Guy's claim that Lara purposefully delayed her probable cause hearing. However, because the facts in paragraphs 34-41, 44, and 47-50 are irrelevant with respect to establishing Lara's ill will, pursuant to Fed. R. Civ. P. 56(e), the Court will not consider them. Accordingly, plaintiffs' motion to strike defendants' response regarding immateriality as to paragraphs 42, 43, and 45 is granted and those paragraphs are deemed admitted.[6]

## II. Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[6]With regard to plaintiffs' statement in paragraph 46 that Lara coerced Mrs. Guy to give a statement, that claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1944), in which the Supreme Court held that a plaintiff who has been convicted of a crime cannot seek damages under section 1983 if that claim would necessarily imply that the conviction was invalid. If the Court were to find that Lara coerced Mrs. Guy to give a statement concerning the charges against her, that ruling would necessarily imply the invalidity of her conviction on the Unlawful Use of a Weapon charge. *See, e.g., Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996). Thus, pursuant to *Heck*, Mrs. Guy has no right to relief on this claim unless her conviction is "reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck*, 512 U.S. at 489.

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering the evidence submitted by the parties, the court does not weigh it or determine the truth of asserted matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All facts must be viewed and all reasonable inferences drawn in the light most favorable to the non-moving party. *NFLC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). "If no reasonable jury could find for the party opposing the motion, it must be granted." *Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 931 (7th Cir. 1995).

As an initial matter, the Guys never revised their Amended Complaint to name any "unknown police officers." As even the plaintiffs concede, the time to do so has passed. The incident occurred on December 5, 1997, and thus the two-year statute of limitations for section 1983 claims against the unknown police officers has expired. Therefore, the Court grants defendants' motion for summary judgment as to all unknown officers in the Amended Complaint.

Next, defendants argue that they should be granted qualified immunity as to plaintiffs' claims that (1) Lara unreasonably detained Mrs. Guy from presentment at her bond hearing; (2) the officers lacked probable cause to continue the detainment of Mr. Guy; and (3) Legge used excessive force on Mr. Guy and Lara failed to intervene. "State officials who occupy positions with discretionary or policymaking authority and are acting in their official capacity may have qualified immunity for claims alleging that the state officials violated the constitutional rights of a plaintiff." *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000). "These officials 'are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

> To evaluate a claim of qualified immunity, we engage in a two-step analysis. First, we determine whether the plaintiffs' claim states a violation of their constitutional rights. Then, we determine whether those rights were clearly established at the time the violation occurred. If the rights were clearly established, the official may be liable for monetary damages and the suit proceeds to the next stage. If the rights were not clearly established, then the official is immune from suit and the claim is dismissed.

*Id.* "It is the plaintiffs' burden to demonstrate that a constitutional right is clearly established." *Id.* "Plaintiff thus must shoulder a rather heavy burden, and appropriately so because qualified immunity is 'designed to shield from civil liability all but the plainly incompetent or those who knowingly violate the law." *Tennen v. Shier*, No. 94 C 2127, 1995 WL 398991, at *5 (N.D. Ill. June 30, 1995) (quoting *Donovan v. City of Milwaukee*, 17 F.3d 944, 952 (7th Cir. 1994)).

The Court first addresses plaintiffs' claim that Lara unreasonably detained Mrs. Guy by purposely delaying her presentment at the bond hearing. "The Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). Such a "determination must be made by a judicial officer either before or promptly after arrest." Id. at 125. "[A] jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).

"Even if a probable cause determination is provided within 48 hours of arrest, however, such a hearing may still violate the Constitution 'if the arrest individual can prove that his or her probable cause determination was delayed unreasonably.'" *Willis v. City of Chicago*, 999 F.2d 284, 287 (7th Cir. 1993) (quoting *McLaughlin*, 500 U.S. at 45). "Examples of unreasonable delay are delays for the purposes of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *McLaughlin*, 500 U.S. at 56. "In

13

evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility." *Id.* "Courts cannot ignore . . . unavoidable delays . . . and other practical realities." *Id.* at 56-57.

The undisputed facts show that the delay in presenting Mrs. Guy in the Maywood court facility for a bond hearing on December 5, 1997 was not an unreasonable one. (Defs.' LR 56.1(a)(3) ¶ 78.) That facility had two bond hearings that day, one at 9:30 a.m. and another at 2:00 p.m. (*Id.*; Ex. K, Karczewski Aff. ¶ 7.) There is no dispute that Lara could not have presented Mrs. Guy to a judge at the Maywood Court Facility on December 5, 1997 because in order to be placed on the next available 2:00 p.m. bond call, Mrs. Guy would have been required to appear at court no later than 1:30 p.m. with all of the paper work completed, *i.e.*, felony approval, fingerprint check, warrant check, and booking materials. (*Id.*) It is undisputed that Assistant State's Attorney Neshek did not approve the felony of Unlawful Use of a Weapon until approximately 3:00 p.m. on December 5, 1997 (*id.* ¶ 77) and that the Illinois State Police did not respond to the fingerprint check until 3:45 p.m. that day (*id.* ¶ 80).

Mrs. Guy argues that the delay in her bond hearing was solely motivated by Lara's ill will toward her. However, Mrs. Guy's contention that the delay was willful and unreasonable is not directly supported by any citation to the record. (Pls.' LR 56.1(b)(3)(A) ¶¶ 76-77.) Her contention that Lara first sought felony review at 3:00 p.m. is without merit. (*See* Pls.' LR 56.1(b)(3)(B) ¶ 32.) It is undisputed that Lara first sought felony approval one hour after Mrs. Guy admitted that the gun was hers and that the admission was obtained sometime prior to 10:30 a.m. (Defs.' LR 56.1(a)(3) ¶ 75; Pls.' LR 56.1(b)(3)(B) ¶ 28.)

Mrs. Guy submits the following undisputed facts from which she would like the Court to infer that Lara willfully and unreasonably delayed her presentment at the bond hearing: (1) Mrs. Guy was handcuffed for three hours–from the time of her arrest and throughout her interview with Lara and the FBI agents (Pls.' LR 56.1(b)(3)(B) ¶ 45); (2) after Mrs. Guy complained that she was unable to use the toilet without being seen, Lara told Mrs. Guy that she would have to use the toilet in the cell as it was (*id.* ¶ 42); and (3) Lara left the door leading from the cell area to the station house area ajar wide enough for her to see into the adjoining area (*id.* ¶ 42). Although Mrs. Guy believes that the inference she seeks to draw from these facts is reasonable, the Court cannot agree. It would be unreasonable to infer from these facts that Lara purposely delayed her presentment at the bond hearing because he harbored ill will toward her. The facts simply do not support such an inference. Because no rational jury could find in plaintiffs' favor, the Court grants Lara qualified immunity as to the claim of unreasonable detention of Mrs. Guy (Count V).

Next, the Court addresses whether to grant the officers qualified immunity with regard to plaintiffs' claim that the officers' continued detainment of Mr. Guy lacked probable cause. Plaintiffs concede that probable cause existed to support the initial stop and initial detainment of Mr. Guy. (*See* Pls.' Mem. Law Opp. Summ. J. at 4.) Upon the initial stop and initial detainment of Mr. Guy, he was handcuffed and frisked. (Defs.' LR 56.1(a)(3) ¶¶ 18-26, 31, 40; Defs.' Ex. C.) Plaintiffs, however, argue that probable cause for the further detention of Mr. Guy ceased within the first 30 minutes following the stop. (Pls.' Mem. Law Opp. Summ. J. at 6.)

"The continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause." *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986). Probable cause exists where "the facts and circumstances within [defendants']

knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed . . . an offense." *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964).

A determination of probable cause is based "not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer–seeing what he saw, hearing what he heard." *Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992). "Probable cause is a fluctuating concept; its existence depends upon 'factual and practical considerations of everyday life.'" *BeVier*, 806 F.2d at 126 (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). Law enforcement officials who "reasonably but mistakenly conclude that probable cause is present" are entitled to qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

Thus to determine whether Legge and Lara should be granted qualified immunity as to further detention of Mr. Guy, the Court must determine what each of them saw and heard and whether a reasonable person in each of their positions would have thought that probable cause existed to continue detaining Mr. Guy. We address each officer in turn.

The following facts with respect to Legge are undisputed. Legge heard the suspect described as an armed, bearded, white male wearing a ball cap and a red plaid shirt. (Defs.' LR 56.1(a)(3) ¶ 12.) Legge heard Lara's broadcast to the dispatcher in which Lara stated that he had stopped the vehicle of a suspect who matched the suspect's description and gave his location. (*Id.* ¶ 19.) Legge proceeded to the location to assist Lara. (*Id.*) Upon arriving at the scene, Hoes told Legge that the suspect had not been searched. (*Id.* ¶ 26.) Mr. Guy had dark hair and a mustache and goatee and was wearing a blue baseball cap, a red, blue and white plaid flannel shirt, and jeans. (Defs.' Ex. F,

Mr. Guy photograph of 12/5/97.) Legge then frisked Mr. Guy. (*Id.* ¶ 29.) Legge did not recall being told that Mr. Guy was a local landscaper. (*Id.* ¶ 39.) Legge was not present during the show-up in which the witnesses to the bank robbery viewed Mr. Guy, and Legge was never made aware that the witnesses did not positively identify Mr. Guy as the robber. (*Id.* ¶ 51.)

Based on what Legge heard and saw, a reasonable person in his position would believe that probable cause which previously existed during the initial stop and detention continued to exist during that portion of Mr. Guy's further detention in which Legge participated. According to what Legge heard, Mr. Guy matched the description of the bank robber. Legge did not recall anyone identifying Mr. Guy as a local landscaper. Even if he had heard such an identification, it would not negate probable cause because it is possible for local residents to rob banks. Further, even if Legge had heard Mrs. Guy identify herself and say to Lara that the Guys had gone to the post office, this does nothing to dissipate probable cause. Because plaintiffs have not met their burden in establishing that their claim states a violation of their constitutional rights by Legge, the Court grants Legge qualified immunity as to Mr. Guy's continued detention.

Next, the undisputed facts with regard to Lara are as follows. Lara heard the radio dispatcher identify the robber as a "male white, who had a checkered shirt on, who was wearing a ball cap" and who had "red hair." (Defs.' LR 56.1(a)(3) ¶ 9.) As Lara approached the bank, he heard Officer Hoes' radio dispatch, in which he stated that a red and white pickup was leaving the bank and that a person fitting the description of the bank robber was inside the truck. (*Id.* ¶ 16.) After hearing Hoes' dispatch, Lara saw a vehicle driving away from the bank matching the description Hoes gave with a driver matching the description of the bank robber. (*Id.* ¶ 17.) After Lara stopped the truck, he reported to the dispatcher that he had stopped the vehicle of the offender, who he believed

matched the description of the bank robber. (*Id.* ¶ 19.) Mr. Guy was wearing a blue baseball cap, a red, blue and white plaid flannel shirt, and jeans and had dark hair and a mustache and goatee. (Defs.' Ex. F, Guy Photograph of 12/5/97.) After the Guys were handcuffed and frisked, Lara searched the Guys' truck. (*Id.* ¶ 40.) During the search, Lara located a loaded handgun in Mrs. Guy's purse. (*Id.* ¶ 41.)

Approximately twenty-five minutes after Lara stopped the Guys, Assistant Chief Johnson drove the witnesses to view Mr. Guy at the scene. (Id. ¶¶ 44, 46.) After the show up, Lara heard a radio dispatch from Assistant Chief Johnson indicating that there was not a positive identification. (*Id.* ¶ 47.)[7] After hearing that dispatch, Lara ordered officers to transport the Guys to the Riverside Police Station. (*Id.* ¶ 48.) Lara then secured the scene where the Guys were detained and discovered a large, empty gun holster. (*Id.* ¶ 56.) Lara thought the holster was suspicious because it was consistent with that used to hold a revolver and witnesses reported that the bank robber had used a revolver. (*Id.* ¶ 57.)

FBI agents arrived at the station and asked Lara about the status of their preliminary investigation. (*Id.* ¶ 64.) Lara replied that Mr. Guy matched the description of the robber but that the witnesses could not positively identify Mr. Guy as the bank robber. (*Id.* ¶ 65.) After the FBI

---

[7]Although plaintiffs aver that Mr. Guy heard and the audio tape indicates unequivocally that Mr. Guy was not the robber, the tape merely reveals that Johnson stated, "Riverside units, that's a negative . . . that's a negative." (Defs.' Ex. C, Radio Dispatch Tape of 12/6/97.) Further, nothing in the record supports plaintiffs' sheer speculation that the tape omits certain radio dispatch transmissions. Moreover, a determination of probable cause is not based on what Mr. Guy heard but is based on facts as they would have appeared to a reasonable person in the position of Lara–seeing what Lara saw and hearing what Lara heard.

agents interviewed the Guys and determined that they were not involved in the bank robbery, they suggested to Lara that he release Mr. Guy, and Lara released him shortly thereafter. (*Id.* ¶ 71.)

Again, the Court finds that a reasonable person in Lara's position seeing what he saw and hearing what he heard would have believed probable cause existed to further detain Mr. Guy. Although Lara heard the dispatcher describe the bank robber as having red hair and Mr. Guy had dark hair, Mr. Guy otherwise matched the description of a white male, wearing a checkered shirt, wearing a blue baseball cap and driving a vehicle that matched the red and white pickup truck that Officer Hoes described as leaving the bank driven by a person fitting the suspect's description. In addition, Lara found a loaded handgun during his search of the Guys' truck. He discovered a holster which was consistent with that used with a revolver after he secured the scene surrounding the Guys' vehicle, and the suspect allegedly used a revolver during the bank robbery. A reasonable person, seeing what Lara saw and hearing what he heard, would believe that probable cause existed to continue detaining Mr. Guy.

For the same reasons discussed above, even if Lara could recall someone recognizing Mr. Guy as a local landscaper, this does not make the probable cause for the initial stop disappear. Likewise, even if Mrs. Guy identified herself and explained her presence in the bank's vicinity to Lara and even if such identification could have been substantiated by Mrs. Guy's identification in her purse or papers in the car, these facts do not dissipate probable cause. Further, that Johnson announced after the show up, "Riverside units, that's a negative . . . that's a negative," and that Lara interpreted this statement as indicating that the eyewitnesses could not positively identify Mr. Guy as the bank robber does not destroy the previously existing probable cause to detain him. *See, e.g., Olinger v. Larson*, 134 F.3d 1362, 1366 (8th Cir. 1998) (stating that witness' inability to identify

suspect did not vitiate whatever probable cause that may have previously existed). A rational person in Lara's position would have done exactly what Lara did–continue to detain Mr. Guy. Therefore, because plaintiffs have not met their burden in establishing that their claim states a violation of their constitutional rights by Lara, the Court grants Lara qualified immunity as to Mr. Guy's continued detention.

Finally, the Court addresses whether to grant the officers qualified immunity as to plaintiffs' claim that Legge used excessive force during the frisk and Lara did not stop Legge's conduct. "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "In order to decide whether the amount of force used during a seizure is 'excessive,' we examine the totality of the circumstances to determine whether the intrusion on the citizen's Fourth Amendment interests was justified by the countervailing government interests at stake." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000).

> The Fourth Amendment test is an objective one, where the officer's subjective good or bad intentions do not enter into the analysis. We consider factors such as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. We also consider whether the citizen was under arrest or suspected of committing a crime, was armed, or was interfering or attempting to interfere with the officer's execution of his or her duties. In the end, the excessive force inquiry looks to whether the force used to seize the suspect was excessive in relation to the danger he posed–to the community or to the arresting officer–if left unattended.

*Id.* (citations and quotations omitted).

Plaintiff may satisfy the burden to demonstrate the establishment of a constitutional right with regard to an excessive force claim by either: (1) "point[ing] out a closely analogous case that established that he had a constitutional right to be free from the type of force the police officers used on him"; or (2) "show[ing] that the force used was so plainly excessive that the police officers should have been on notice that they were violating the Fourth Amendment." *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir. 1993).

The undisputed facts show Mr. Guy was suspected of committing the crime of armed bank robbery. (Defs.' LR 56.1(a)(3) ¶¶ 16, 19.) Plaintiffs concede that the officers initially had probable cause to stop and detain the Guys and that the probable cause existed thirty minutes after the initial stop. (*See* Pls.' Mem. Law Opp. Summ. J., at 4.) Thus the crime that the police suspected Mr. Guy to have committed when they apprehended him was severe and the danger that such a suspect posed to the community was serious.

The undisputed facts further establish that after Hoes handcuffed Mr. Guy, Officer Legge directed Mr. Guy to the back of the squad car, bent him over the car, spread his legs, and began to search his legs. (Defs.' LR 56.1(a)(3) ¶ 28-31.) Legge informed Mr. Guy that it was not a laughing matter and that the FBI was involved to which Mr. Guy replied, "F*** the FBI." (*Id.* ¶ 30.)

There exists, however, a genuine issue of material fact as to what force was used by Legge and whether Mr. Guy resisted, and, as a result, there is a dispute as to whether the force used was excessive. Legge contends that because Mr. Guy resisted being frisked, *i.e.*, interfered with Legge's execution of his duties, Legge felt it necessary to use a pressure point technique to position him to be frisked. (*Id.* ¶ 27.) Mr. Guy, on the other hand, contends that he offered no resistance whatsoever and that Legge lifted his arms up while they were handcuffed behind him. (Pls.' LR 56.1(b)(3)(A)

21

¶ 27.)  Whether Mr. Guy's version of events or Legge's is more credible is not an issue properly decided by the Court on a motion for summary judgment.  This genuine issue as to a material fact precludes the Court from determining whether Legge should be granted qualified immunity as to the excessive force claim.  Further, Lara's qualified immunity for failing to intervene necessarily depends on the reasonableness of the force used.  Moreover, the dispute as to whether Mr. Guy resisted and what force Legge used precludes an entry of summary judgment on the merits of plaintiffs' excessive force claim.  Therefore the Court denies defendants' motion for summary judgment as to Count II.

## Conclusion

For the forgoing reasons, the Court grants in part and denies in part defendants' and plaintiffs' motion to strike [53-1, 54-1] and grants in part and denies in part defendants' motion for summary judgment [36-1].  The summary judgment motion is granted as to:  (1) any claims against unknown officers; (2) unreasonable detention of Mrs. Guy (Count V) because Lara is shielded by qualified immunity; and (3) continued detention of Mr. Guy without probable cause (Count I) because both Lara and Legge are granted qualified immunity.  Defendants' motion is denied as to Count II in which plaintiffs claim Legge and Lara are liable for excessive force as to Mr. Guy.

**SO ORDERED.**

ENTER:  9/11/00

UNITED STATES DISTRICT JUDGE